**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2018 APR -6  PM 12: 36

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

**PILOT ENERGY SOLUTIONS, L.L.C.,**
**Plaintiff,**

**-vs-**

**OXY USA, INC.,**
**Defendant.**

**CAUSE NO.:**
**AU-16-CA-00687-SS**

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Oxy USA, Inc. (Oxy)'s Motion for Summary Judgment of Non-Infringement [#108], Plaintiff Pilot Energy Solutions, L.L.C. (Pilot)'s Response [#121] in opposition, and Oxy's Reply [#122] in support. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and order.

### Background

This is a patent infringement action. On August 26, 2014, Pilot was issued Patent No. 8,816,148 (the '148 Patent) by the U.S. Patent Office. Am Compl. [#29] at 1. The '148 Patent is entitled "Carbon Dioxide Fractionalization Process" and relates to the processing of natural gas. Natural gas found in the ground is a mixture of different molecules, including water, carbon dioxide, and hydrocarbons, and must be refined to be commercially useful. *Markman* Hr'g Tr. [#94] at 130:24–131:7. Natural gas streams with relatively more heavy hydrocarbons are "heavy hydrocarbon streams," and streams with relatively fewer heavy hydrocarbons are "light hydrocarbon streams." *Id.* at 158:9–18, 159:2–21. Similarly, natural gas streams with

1

relatively more carbon dioxide are "carbon dioxide-rich" streams, and streams with relatively less carbon dioxide are "carbon dioxide-lean" streams. *Id.* at 13:5–7.

Carbon dioxide is removed from a natural gas process through a sweetening process, which generally occurs in hydrocarbon sweetening facilities, such as Selexol plants. In recent years, however, the carbon dioxide levels in natural gas found in some west Texas fields have risen, while at the same time, the existing Selexol plants built to service these fields remained fixed in how much carbon dioxide they could separate from the hydrocarbon streams. Consequently, the only way to separate more carbon dioxide using existing technology was to build more Selexol plants, which "are very costly to build and operate." Pl.'s Post-*Markman* Brief [#88] at 3.

According to Pilot, the process embodied in the '148 Patent was developed to address this problem and serve as a complement to a Selexol facility. The '148 Patent provides for a separation process in which a carbon dioxide-lean stream and a carbon dioxide-rich stream are separated from a light hydrocarbon stream. At least a portion of the resulting carbon dioxide-lean stream is then used to cool a hydrocarbon stream before it undergoes the separation process. Pl.'s Mot. Summ. J. [#38] at 12 (citing '148 Patent). Finally, at least a portion of the carbon dioxide-lean stream is fed into a Selexol plant for hydrocarbon sweetening. *Id.*; Pl.'s Post-*Markman* Brief [#88] at 4.

Some time prior to receiving the '148 Patent, Pilot obtained design drawings of a hydrocarbon gas processing plant (the Century Plant) operated by Oxy. Am. Compl. [#29] at 2. Upon reviewing the design of the Century Plant, Pilot concluded the Century Plant infringed on Claims 1, 3, 5, 6, 7, 8, 10, and 33 of the '148 Patent. Am. Compl. [#29] at 9. Claim 1 and Claim

33 are independent claims, while the rest of the asserted claims are dependent. Pl.'s Mot. Summ. J. [#38] at 14.

Relevant here, both Claim 1 and Claim 33 of the '148 Patent contain a "cooling" limitation which requires cooling a hydrocarbon stream using at least a portion of the carbon dioxide-lean stream." Pl.'s Mot. Summ. J. [#38] at 8. Pilot concluded the Century Plant met this "cooling" limitation because it used a portion of a carbon dioxide-lean stream to cool a hydrocarbon stream. *Id.* at 12–13. Importantly, however, the Century Plant design diagrams indicate the Century Plant also uses a portion of the carbon dioxide-rich stream to cool the hydrocarbon stream. Am. Compl. [#29] at ¶ 26 (identifying E-1207 as component where cooling limitation occurs); Def.'s Mot. Summ. J. [#108-1] Ex. B at 15 (Prim Dep.) (identifying stream 25—which flows through E-1207 and participates in the cooling process—as part of the carbon dioxide-rich stream).

In August 2014, Pilot informed Oxy that it believed the Century Plant infringed on the '148 Patent. Am. Compl. [#29] at 9–10. Oxy investigated Pilot's infringement contentions but concluded the Century Plant did not infringe on the '148 Patent and, in any event, the '148 Patent is likely invalid. *Id.*

On June 16, 2016, Pilot filed this action against Oxy, alleging Oxy's Century Plant infringed on the '148 Patent. Compl. [#1] at 1–2. In November 2016, Pilot sought summary judgment on a theory literal infringement. Pl.'s Mot. Summ. J. [#38] at 5. Pilot argued the Century Plant literally infringed on the asserted claims of the '148 Patent as a matter of law because there was no factual dispute as to how the Century Plant functions. *Id.* The Court dismissed Pilot's motion for summary judgment without prejudice to refiling after the *Markman* hearing. Order of Feb. 16, 2017 [#75] at 1.

After the *Markman* hearing on May 12, 2017, the Court issued a *Markman* order construing the disputed claim terms of the '148 Patent. Order of August 25, 2017. On November 21, 2017, Oxy filed a motion for summary judgment arguing Pilot's infringement contentions are untenable in light of the Court's *Markman* order. Def.'s Mot. Summ. J. [#108] at 13. This pending motion is ripe for review.

## Analysis

### I.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence establishing the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and

thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

To infringe a method or process claim, a person must have practiced all steps of the claimed method. *Lucent Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); c*f. Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1341 (Fed. Cir. 2016) (Literal infringement of a patent exists "when every limitation recited in the claim is found in the accused device." (internal citation omitted)).

Oxy argues it is entitled to summary judgment because Pilot cannot show infringement of the "cooling" limitation set forth in independent Claims 1 and 33. Mot. Summ. J. [#108] at 13–18. The Court's *Markman* order construed the "cooling" limitation to require cooling an

incoming feed stream with "at least a portion of the carbon dioxide-lean stream, but not the carbon dioxide-rich stream." Order of Aug. 25, 2017 [#102] at 12–14. Oxy's Century Plant, however, uses both a carbon dioxide-lean stream *and* a carbon dioxide-rich stream to cool the incoming feed stream. Am. Compl. [#29] at ¶ 26; Prim Dep. at 15. Oxy contends Century Plant cannot meet the "cooling limitation" because the Century Plant uses a carbon-dioxide rich stream during the cooling process. Mot. Summ. J. [#108] at 13–18.

In response, Pilot argues a genuine issue of fact exists as to whether the Century Plant does, in fact, use the carbon dioxide-rich stream for cooling. Resp. Def.'s Mot. Summ. J. [#121] at 1–3. Pilot speculates the Century Plant might have closed a valve—Valve LC 002—in the carbon dioxide-rich refrigeration circuit in order to economize on costs. *Id.*; *see also id.* [#121-1] Ex. 1 at 1–5 (Prim Decl.). If this valve is closed, Pilot argues, the Century Plant will meet the "cooling" limitation by cooling the incoming feed stream with "at least a portion of the carbon dioxide-lean stream, but not the carbon dioxide-rich stream." *Id.* Pilot does not assert or allege Valve LC 002 *is* closed—its only assertion is that the valve *might* be closed. *Id.*

In order to survive summary judgment, Pilot must point to competent summary judgment evidence creating a genuine fact issue as to whether the Century Plant meets the "cooling limitation" contained in independent Claims 1 and 33. *See Turner*, 476 F.3d at 343. Pilot has not done so. The only evidence submitted by Pilot consists of a factual affidavit offered by Oxy's President, Eric Prim. Prim Decl. at 1–5. Prim speculates the Century Plant "might" have closed Valve LC 002 to shut off the carbon dioxide-rich refrigeration circuit and cut costs. Prim Decl. at 1–5. However, Prim's affidavit is insufficient to create a genuine issue of material fact because unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Turner*, 476 F.3d at 343. Prim has not offered any non-

speculative factual basis for his supposition that the carbon dioxide-rich refrigeration circuit "might" be closed off. Prim Decl. at 1–5. Moreover, neither Pilot nor Prim actually allege the carbon dioxide-rich refrigeration circuit is actually closed off. *See id.*; Am. Compl. [#29].[1]

In sum, Pilot has not put forward any evidence creating a genuine issue of material fact as to whether the Century Plant meets the "cooling" limitation set forth in independent Claims 1 and 33 of the '148 Patent. Absent a genuine issue of material fact as to whether the Century Plant meets the "cooling" limitation, Oxy is entitled to summary judgment on Pilot's claims that Oxy has infringed independent Claims 1 and 33. And because the remainder of Pilot's infringement claims are dependent upon Claim 1 and Claim 33, Oxy is entitled to summary judgment on Claims 3, 5, 6, 7, 8, and 10 as well. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .").

## Conclusion

Oxy is entitled to summary judgment of non-infringement on independent Claims 1 and 33 as well as dependent Claims 3, 5, 6, 7, 8, and 10 of the '148 Patent. Because Pilot's lawsuit consisted solely of these infringement claims, Pilot has no remaining claims in this litigation.

Accordingly,

IT IS ORDERED Oxy's Motion for Summary Judgment of Non-Infringement [#108] is GRANTED.

SIGNED this the _6th_ day of April 2018.

*Sam Sparks*

SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] In fact, the only non-speculative evidence in the record on this point indicates the carbon dioxide-rich circuit has never been closed off. *See* Reply Mot. Summ. J. [#122-1] Ex. A at 2–3 (Davis Aff.) (stating carbon dioxide-rich circuit is not closed off and plant operations lead has no knowledge of the Century Plant *ever* having deactivated the carbon dioxide-rich refrigeration circuit).